# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-0457 |
| ) | Judge Nixon |
| ALLSTATE INDEMNITY COMPANY, ) | |
| ) | |
| Defendant. ) | JURY DEMAND |
| ) | |

## ORDER

Pending before the Court is Defendant Allstate Indemnity Company's ("Defendant") Motion for Summary Judgment (Doc. No. 21) ("Defendant's Motion"), filed with a supporting Memorandum (Doc. No. 21-1) and Statement of Facts (Doc. No. 21-2). Plaintiff Johnny Jones ("Plaintiff") has filed a Response in Opposition (Doc. No. 32), a Response to Defendant's Statement of Facts (Doc. No. 33), and a Supplemental Response to Defendant's Statement of Facts (Doc. No. 37). Defendant submitted a Reply (Doc. No. 34).

For the reasons stated herein, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

Also pending before the Court is Defendant's Motion to Compel Specific Responses to Defendant's Statement of Undisputed Material Facts (Doc. No. 35). Plaintiff filed a Response in Opposition to this Motion (Doc. No. 36). This Motion arose from the inability of the parties to agree whether Plaintiff had adequately responded to Defendant's Statement of Facts. Plaintiff argued that his then-pending Motion to Withdraw and Amend Admissions (Doc. No. 26) rendered Defendant's Motion to Compel inappropriate, and offered to submit supplemental responses, which

-1-

he did on August 13, 2010 (Doc. No. 37). Magistrate Judge Knowles subsequently denied Plaintiff's Motion to Withdraw and Amend Admissions on February 28, 2011. (Doc. No. 42.) In light of these events, the Court finds that Defendant's Motion to Compel is **MOOT**.

## I.     BACKGROUND

### A.     *Procedural History*

On April 9, 2009, Plaintiff filed a Complaint against Defendant for breach of contract in Sumner County Circuit Court. (Doc. No. 1-1.) Defendant removed this action to federal court on diversity grounds on May 21, 2009 (Doc. No. 1). The Court has jurisdiction under 28 U.S.C. § 1332.

On February 5, 2010, Defendant filed a Motion to Deem Request for Admissions Admitted (Doc. No. 17), which Magistrate Judge Knowles denied on the grounds that Federal Rule of Civil Procedure 36(a) already provided that the Admissions were admitted because Plaintiff did not respond to Defendant's requests for admissions within the 30 days required by Rule 36(a)(3) (Doc. No. 18).

Defendant subsequently filed this Motion for Summary Judgment on May 3, 2010, stating that there are no genuine disputes as to any material fact and that it is entitled to judgment as a matter of law. Plaintiff filed a Motion for Extension of Time to File Response/Reply to Defendant's Motion for Summary Judgment on May 26, 2010 (Doc. No. 23), which Magistrate Judge Knowles granted on May 27, 2010 (Doc. No. 24). Magistrate Judge Knowles provided Plaintiff with leave to Respond to Defendant's Motion through July 1, 2010. *Id.*

On June 9, 2010, Plaintiff filed a Motion to Withdraw and Amend Admissions to Defendant's First Requests for Admissions. (Doc. No. 26.) Defendant filed a Response opposing

-2-

Plaintiff's Motion to Withdraw (Doc. No. 29).

While that Motion to Withdraw was pending, Plaintiff filed a Response to Defendant's Motion for Summary Judgment on July 2, 2010. (Doc. No. 32.) Defendant filed its Reply on July 16, 2010. (Doc. No. 34.)

On February 28, 2011, Magistrate Judge Knowles denied Plaintiff's Motion to Withdraw and Amend Admissions. (Doc. No. 42.)

  B.  *Factual History*[1]

On February 9, 2007, Plaintiff completed Allstate Indemnity Company Manufactured Home Policy Application number 000078703835604 ("Application") to obtain insurance coverage for the property located at 1212 Slaters Creek Road, Goodlettsville, TN, 37072 ("the Property"). In doing so, Plaintiff initialed the Application on Page 6 (after reading Page 6) and signed it on Page 8 (after reading Page 8). Allstate Indemnity Company Manufactured Home Policy number 9552088539 ("Policy") was issued consequent to the Application. The Policy was intended to cover the property located at 1212 Slaters Creek Road.

In response to the query of how many adult occupants resided at the Property, the Application, as completed by Plaintiff, states "1." In response to the query of how many child occupants resided at the Property, the Application states "0." On the date of the fire, July 11, 2008, however, two adults and one child resided in the home located at the Property. In response to the query of the number of dogs on the premises at the home located at the Property, the Application states "None"; however, on July 11, 2008, two dogs (deemed vicious breeds) were kept on the

---

[1] Unless otherwise noted, all facts in this section are undisputed or admitted and are taken from Plaintiff's Response to Defendant's Statement of Undisputed and Material Facts (Doc. No. 33), Plaintiff's Supplemental Responses (Doc. No. 37), or the admitted Requests for Admission (Doc. No. 17-2), *see* Doc. Nos. 18 at 2 & 42 at 7.

premises of the home located at the Property.

In response to the query of "Is there any store, business, or professional activity in the Manufactured Home?", the Application states "No." However, Plaintiff operated a business known as The Hangman from the premises' manufactured home, where he at least performed administrative tasks and kept some supplies at the Property. Mr. Bubba Parks operated a business providing automotive services on the same premises. Plaintiff now states that he believed that a portion of his property was deemed commercial because he held a commercial license to conduct automotive services on the property.

In response to the query of "Any unattached building structures including garage, on premises?", the Application states "No." However, there was a garage located on the premises identified on the Application. Plaintiff states that "No" was indicated in response to this query "as Defendant Allstate did not insure the unattached structure or garage." (Doc. No. 27 at 6.)

After Plaintiff submitted the Application, Defendant denied coverage until certain repairs were made to the Property; the Policy was issued only after Plaintiff represented that certain repairs were made to the Property. Plaintiff brought photographs to the office of Defendant's agent, which allegedly depicted the repairs. However, those photographs were fraudulent and did not depict 1212 Slaters Creek. Plaintiff never made the repairs to 1212 Slaters Creek.[2]

At the time of the fire described in Plaintiff's Complaint (Doc. No. 1-1), Plaintiff was in or near Beach Bend, Kentucky, with Andrena Green and her minor daughter. Plaintiff planned the trip

---

[2] Plaintiff, in his Response to Defendant's Statement of Facts, denies that Plaintiff presented photographs to the Allstate agent's office and states that an Allstate inspector actually took photographs after the repairs were made. Plaintiff also denies that he submitted fraudulent photographs, and states that Plaintiff did make the repairs to the property and Defendant issued the policy after the repairs were made. (Doc. No. 37 at 6-7.) However, as discussed in Part I.A., *supra*, these facts were deemed admitted (Doc. No. 42), and the Court will consider them as properly admitted for the purposes of deciding Defendant's Motion.

to Beach Bend less than 24 hours before leaving for that trip on July 11, 2008, and contacted Ms. Green about accompanying him to Beach Bend less than 24 hours before their departure. Plaintiff had not communicated with Ms. Green for at least four months before calling her. Plaintiff and Ms. Green drove separately to Beach Bend. Driving separately from Ms. Green allowed Plaintiff to return to Goodlettsville without Ms. Green or her daughter.

At this time, Plaintiff was intimately involved with Ms. Carrie Trotter. Ms. Trotter and Ms. Trotter's daughter resided with Plaintiff at the Property at the time of the fire. Ms. Trotter was working a night shift on July 11, 2008. She left her child with her sister for two days, including the day before and the day of the fire. Plaintiff, Ms. Trotter and her daughter were all set to be out of the house at the Property on the afternoon and evening of July 11, 2008.

The dogs residing at the Property were also moved away from the house and chained out of harm's way on July 11, 2008. The snake residing at 1212 Slaters Creek was not harmed in the fire, either. None of Plaintiff's pets were harmed in the fire.

The fire was determined to be the result of arson in an expert report generated by EFI Global. Deodorized mineral spirits were determined to be an accelerant used in the fire.

Plaintiff caused, or directed another person to cause, the fire that destroyed the home located at Property. At all times relevant to this matter, Plaintiff was aware that the fire that destroyed the home at Property was the result of arson.[3]

Plaintiff filed a claim with Defendant for insurance proceeds after the fire loss. He submitted it with a sworn statement in support of his claim for insurance proceeds, wherein he

---

[3] The Court here notes that although Plaintiff has attempted to withdraw certain Admissions (Doc. No. 26-1, citing Doc. No. 17-2 at ¶¶ 1-22), the requests for admission concerning Plaintiff's involvement of arson at the Property are located at Doc. No. 17-2, ¶¶ 43-44, which Plaintiff did not move to withdraw, amend, or correct. *See also* Doc. No.

swore that "said loss did not originate by any act, design, or procurement on the part of this insured, or this affiant [and] nothing has been done by or with the privity or consent of this insured or this affiant, to violate the conditions of the policy, or render it void." (Doc. No. 21-12.)

After a thorough and complete investigation of the claim by Defendant, Defendant determined that the Application signed by Plaintiff contained numerous material inaccuracies and intentional misrepresentations, including: the number of people living at the residence; vicious dogs residing at the residence; two commercial businesses being operated on the premises; and that, during the policy application process, necessary repairs had not been made to the residence. The Application signed and initialed by Plaintiff states: "It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits." (Doc. No. 21-7 at 7.) The Policy itself states: "**Concealment Or Fraud:** This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy." (Doc. No. 27-10 at 5 (emphasis in original).) The Policy further stated: "**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material facts or circumstance." *Id.*

Because of these material misrepresentations, Defendant denied coverage for the fire loss on February 27, 2009. (Doc. No. 21-5.) Defendant stated in its denial that Plaintiff "committed material misrepresentations in [his] Application for insurance" and this rendered the Policy "void ab initio." Defendant also stated its position that, due to Plaintiff's material misrepresentations in the

---

42 at 3 n.1 (Magistrate Judge Knowles noting that Plaintiff does not request to withdraw admissions at ¶¶ 23-44).

Application, the Policy never took effect and was never in force. *Id.* Defendant then stated that it was exercising its right to rescind the Policy at inception. *Id.* For grounds, Defendant pointed to the Policy's provision that the policy "is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy." *Id.* Defendant then indicated to Plaintiff that it would be refunding any premiums he paid to Defendant under separate cover. *Id.*

Plaintiff then filed the instant action in state court on April 9, 2009 seeking enforcement of the policy (Doc. No. 1-1), and Defendant removed the action to federal court on May 21, 2009 (Doc. No. 1).

## II.  STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere

-7-

Case 3:09-cv-00457   Document 45   Filed 03/30/11   Page 7 of 14 PageID #: 523

possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is only genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Id.* at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder would not find for the non-moving party, summary judgment must be granted. *See Matsushita*, 475 U.S. at 249-50.

### III.   DISCUSSION

Tennessee law establishes that material misrepresentations submitted on an application for insurance will render any resulting insurance contract void ab initio and unenforceable by a claimant. Tenn. Code Ann. § 56-7-103 (2009). The misrepresentation must be "made with actual intent to deceive" or "the matter represented" must "increase[] the risk of loss" to the insurer. *Id.* The insuring party carries the burden of establishing the existence of a misrepresentation in the application. *McDaniel v. Physicians Mut. Ins. Co.*, 621 S.W.2d 391, 393 (Tenn. 1981). The insuring party "can defeat coverage by showing either that the misrepresentation was made with the intent to deceive or that the matter represented increased the risk of loss." *Valley Forge Life Ins.*

-8-

*Co. v. Gothard*, No. 3:05-cv-0312, 2006 WL 1582424 at *3 (M.D. Tenn. June 5, 2006) (citing *Vt. Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000)). "Whether the answers made by an applicant for insurance to the questions on the application were true is a question of fact, while whether a false answer materially increased the insurer's risk is one of law." *Valley Forge*, 2006 WL 1582424 at *3 (citing *Cummings v. Fed. Kemper Life Assurance Co.*, 908 F. Supp. 512, 514 (E.D. Tenn. 1995); *Stafford v. Allstate Ins. Co.*, No. 04-2811 MA, 2006 WL 335588 at *3 (W.D. Tenn. Feb. 13, 2006)).

Defendant argues that there is no genuine dispute of material fact, because Plaintiff has admitted the existence of misrepresentations on the Application and has not denied his culpability for those misrepresentations. (Doc. No. 21-1 at 7.) Plaintiff has admitted that multiple misrepresentations were included on the Application, and that Plaintiff reviewed those misrepresentations prior to initialing and signing the Application. Defendant argues, citing *Stafford*, that because the fact that the Application contained false answers is undisputed, "the only matter remaining for discussion is a determination of whether the misrepresentations made by Plaintiff materially increased Defendant[]'s risk of loss." *Id.*

Plaintiff, however, now disputes that misrepresentations exist on the Application. (Doc. No. 32 at 3-4.) He states that the four alleged misrepresentations relied upon by Defendant to deny coverage under the Policy "were actually true and accurate statements at the time of the application process in February of 2007." *Id.* at 4. According to Plaintiff, the four essential misrepresentations cited by Defendant are that: (1) No commercial activities were engaged in on the premises; (2) No dogs lived at the premises; (3) Only one adult lived at the premises; and (4) Necessary repairs were made to the premises during the underwriting process. (Doc. No. 32 at 3.) Plaintiff claims that

-9-

"[a]ll of these alleged misrepresentations were actually true and accurate statements at the time of the application process in February of 2007." *Id.* at 4. The bulk of Plaintiff's Response argues that at the time Plaintiff completed the Application, the conditions were as he stated in the Application. *Id.* at 4-8.

As Defendant notes in its Reply, however, the Policy itself states that if material matters change, then "the insured . . . should inform the insurer." (Doc. No. 34 at 6.) The Policy states:

> The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

(Doc. No. 21-9 at 18 (emphasis in original).) The Policy also provides that Defendant may

> . . . cancel this policy for one or more of the following reasons: . . . the policy was obtained by misrepresentation, fraud or concealment of material facts; . . . material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or . . . there has been a substantial change or increase in hazard in the risk **we** originally accepted.

*Id.* at 18-19 (emphasis in original).

The Court finds convincing Defendant's argument regarding its right, per the Policy, to cancel or adjust the coverage the Policy provided if the information upon which the decision to offer insurance was based (and which Plaintiff provided to Defendant) was inaccurate. As discussed above, Plaintiff has admitted (both by default (Doc. No. 18) and in his briefs (Doc. No. 26-1)) that, at the time of the loss and the purported coverage by the policy, the information provided in the Application was inaccurate. *See, e.g.*, Doc. No. 26-1 at ¶¶ 8-12. The Court finds that these inaccuracies constitute misrepresentations within the meaning of the Policy and of Tenn. Code Ann. § 56-7-103.

-10-

The Court also notes that Defendant does not pursue the argument that it may defeat coverage in this case merely by showing misrepresentations, nor by showing that Plaintiff made the misrepresentations at issue with the intent to deceive, but rather argues that the misrepresentations increased Defendant's risk of loss. (Doc. No. 34 at 3.) As Defendant states, "[t]he inaccuracies presented by Plaintiff, which were relied upon by Defendant [] in ascertaining the risk of loss inherent in the property were sufficient to have materially increased the risk of loss born by Defendant [] and so any argument made by Plaintiff regarding the timing of these misrepresentations is irrelevant." *Id.* at 6.

The Court agrees with Defendant that the question presented is whether the misrepresentations of fact made by Plaintiff in his Application (which were inaccurate at the time of the loss suffered) "increase[d] the risk of loss" to Defendant. *See* Tenn. Code Ann. § 56-7-103 (2009).

"A misrepresentation made in an application for insurance increases the risk of loss when it is of such importance that it naturally and reasonably influences the judgment of the insurer in making the contract. The matter misrepresented must be of that character which the court can say would reasonably affect the insurer's judgment." *Vt. Mut. Ins. Co.*, 21 S.W.3d at 235 (internal citations omitted). "It is not necessary to find that the policy would not have been issued if the truth had been disclosed. It is sufficient that the insurer was denied information which it sought in good faith and which was deemed necessary to an honest appraisal of insurability. It need not involve a hazard that actually produced the loss in question." *Howard v. Nationwide Prop. & Cas. Co.*, No. 06-2352 B, 2007 WL 2273648, at *6 (W.D. Tenn. July 19, 2007) (citing *Loyd v. Farmers Mut. Fire Ins. Co.*, 838 S.W.2d 542, 545 (Tenn. Ct. App. 1992)); *Smith v. Tenn. Farmers Life Reassurance*

-11-

*Co.*, 210 S.W.3d 584, 590 (Tenn. Ct. App. 2006)).

Tennessee case law has addressed the question of whether falsely stating that commercial activities were not being conducted on the premises to be insured increases the risk of loss to the insurer, and has concluded that it does: due to a plaintiff's "misrepresentations, [the insurer] was denied this opportunity to inspect and thus suffered an increased risk of loss. . . . [The plaintiff's] misrepresentations concerning the operation of a business on her premises had the effect of increasing [the insurer's] risk of loss, in accordance with T.C.A. §56-7-103." *Vt. Mut. Ins. Co.*, 21 S.W.3d at 237. In this case, it is undisputed that a "commercial garage was located on the property." (Doc. No. 33 at ¶ 19; Doc. No. 32-7.) While Plaintiff attempts to explain away the existence of such a business (and its nondisclosure on the Application), the Court finds that failing to disclose the operation of such business on the property to be insured denied to Defendant the opportunity to inspect the premises and accurately assess its risk of loss (and adjust Plaintiff's coverage or premium accordingly). Without such opportunity, Defendant's risk of loss was increased.

The Tennessee Court of Appeals has also found that misrepresentations related to the number of persons residing at a residence to be insured materially affect the risk of the insurer, resulting in the voiding of the policy ab initio. *See Consumers Ins. USA v. Smith*, No. E2002-00724-COA-R3-CV, 2002 WL 31863300 (Tenn. Ct. App. Dec. 23, 2002). Similarly, the Application in this case indicated only one adult resident of the premises to be insured, while at the time of the loss and proposed coverage, it is undisputed that two adults and one child resided at the premises.

Plaintiff also admits that, at the time of the loss and proposed coverage by the Policy, two

dogs were living on the property. Although there is a genuine dispute of material fact as to whether the dogs resided on the property at the time Plaintiff completed the Application, it is undisputed that the dogs (specifically, their breeds) are considered to be of a type that increases the risk associated with a premises so materially as to constitute an unacceptable risk to Defendant. (Doc. No. 21-11 at ¶ 4(b).)

Defendant has submitted a sworn Affidavit stating that all of the misrepresentations at issue in this case are of the type contemplated by Tennessee Code Annotated § 56-7-103. (Doc. No. 21-11.) Tara Murnane, a Territorial Product Manager for Defendant, stated in her Affidavit that the four misrepresentations described above "represented an increase in the risk of loss, and Allstate would not have insured Mr. Jones had truthful, accurate information been provided." *Id.* at 2-3. This testimony is of a type upon which courts frequently rely in order to determine whether the inaccurate information provided in insurance applications materially increased the risk of loss to the insurer, and how "truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." *Smith*, 210 S.W.3d at 590. *See also Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir. 1981); *Vt. Mut. Ins. Co.*, 21 S.W.3d at 235; *Valley Forge*, 2006 WL 1582424, at *3.

Plaintiff's Response correctly states the applicable rule for determining when a misrepresentation increases the risk of loss, but then argues in a conclusory fashion that "Allstate has failed to show that Mr. Jones misrepresented information on his application for insurance which increased Allstate's risk of loss. Mr. Jones made no intentional misrepresentations as shown above. He has suffered a great loss – his home – which Allstate insured and it is a grave injustice that Allstate has refused to cover the loss." (Doc. No. 32 at 10.)

Plaintiff does not point to any evidence in the record to contradict the Affidavit of Tara Murnane that the misrepresentations in the Application did materially affect Defendant's risk of loss. Nor has Plaintiff directed the Court's attention to any case law which contradict the findings discussed above in Tennessee case law, establishing that misrepresentations regarding the number of people in a household and whether commercial activities are being conducted on premises are of the type that allow the insurer to void the policy pursuant to Tennessee Code Annotated § 56-7-103.

Accordingly, the Court finds that there is no genuine dispute of material fact regarding whether Plaintiff made misrepresentations in his Application, and that those misrepresentations increased the risk of loss to Defendant. The Court therefore finds that the Policy was void ab initio, and the Court hereby **GRANTS** Defendant's Motion.

### IV.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not produced sufficient evidence to demonstrate a genuine dispute of material fact regarding whether he made material misrepresentations on his Application for insurance that increased Defendant's risk of loss. The evidence before the Court indicates that no reasonable finder of fact could find that he did not do so. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to all claims levied by Plaintiff against Defendant.

It is so ORDERED.

Entered this ___30th_____ day of March, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-14-